# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LARUE A. MONFORD,

      Petitioner,

  v.

TIMOTHY SHOOP, WARDEN,
CHILLICOTHE CORRECTIONAL
INSTITUTION,

      Respondent.

CASE NO. 2:19-CV-3491
JUDGE JAMES L. GRAHAM
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

On September 20, 2019, the Magistrate Judge issued a Report and Recommendation pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court recommending that this action be dismissed as barred by the one-year statute of limitations provided for under 28 U.S.C. § 2244(d). (ECF No. 4.) Petitioner has filed an Objection to the Magistrate Judge's Report and Recommendation. (ECF No. 7.) Pursuant to 28 U.S.C. § 636(b), this Court has conducted a *de novo* review. For the reasons that follow, Petitioner's Objection (ECF No. 7) is **OVERRULED**. The Report and Recommendation (ECF No. 4) is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED.**

The Court **DECLINES** to issue a certificate of appealability.

On August 1, 2019, Petitioner signed and filed this *pro se* habeas corpus petition challenging his December 17, 2008, convictions after a jury trial in the Franklin County Court of Common Pleas on murder, attempted murder, felonious assault, and carrying a concealed firearm, with specifications. The trial court imposed a sentence of 28 years to life. Petitioner asserts that he was denied the effective assistance of trial and appellate counsel, that the evidence

is constitutionally insufficient to sustain his convictions, and that he was denied a fair trial based on prosecutorial misconduct.

Petitioner objects to the dismissal of this action as time-barred. He complains that the Ohio Court of Appeals "wrongfully summarized [] fabricated facts" and ignored exculpatory evidence and false testimony. (*Objection*, ECF No. 7, PAGEID # 32-33.) Petitioner maintains that he has timely filed this habeas corpus petition, in view of the prosecutor's failure to disclose exculpatory evidence, including documents showing gunshot residue on the victim's hands and other forensic reports. (PAGEID # 33; 37.) Petitioner also complains that interview statements, forensic reports, the coroner's report, and other evidence has not been made a part of the record. According to the Petitioner, the trial court issued a secret off-the-record jury instruction to obtain a guilty verdict. (*Id*.) Referring to the testimony of trial witnesses against him and the lack of physical evidence, Petitioner asserts that he is actually innocent and the victim of a manifest miscarriage of justice. (PAGEID # 34-35.) Petitioner maintains that he has acted diligently in pursuing relief.

Under the provision of 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may not begin to run until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

> [T]he time commences under § 2244(d)(1)(D) when the factual predicate for a petitioner's claim could have been discovered through the exercise of due diligence, not when it was actually discovered by a given prisoner. *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). Also, under § 2244(d)(1)(D), the time under the limitations period begins to run is when a petitioner knows, or through due diligence, could have discovered, the important facts for his claims, not when the petitioner recognizes the legal significance of the facts. *Id*. In other words, § 2244(d)(1)(D) does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim. *Sorce v. Artuz*, 73 F.Supp.2d 292, 294-95 (E.D.N.Y. 1999). Rather, it is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been

> discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts[.] *Tate v. Pierson*, 177 F.Supp.2d 792, 800 (N.D. Ill. 2001)(citing to *Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir. 1998). Furthermore, a habeas petitioner has the burden of proof in establishing that he exercised due diligence in searching for the factual predicate of the habeas claims. *Stokes v. Leonard*, 36 Fed.Appx. 801, 804 (6th Cir. 2002).

*Gilbert v. CCA Halfway House,* No. 2:16-cv-00781, 2016 WL 4417494, at *3 (S.D. Ohio Aug. 19, 2016) (quoting *Redmond v. Jackson*, 295 F.Supp.2d 767, 771 (E.D. Mich. 2003)).

Additionally, the one-year statute of limitations may be equitably tolled upon a "credible showing of actual innocence." *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005). Accordingly, "a petitioner whose claim is otherwise time-barred may have the claim heard on the merits if he can demonstrate through new, reliable evidence not available at trial, that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Yates v. Kelly*, No. 1:11–cv–1271, 2012 WL 487991 (N.D.Ohio Feb.14, 2012) (citing *Souter,* 395 F.3d at 590). Actual innocence means factual innocence, not mere legal sufficiency. *See Bousely v. United States*, 523 U.S. 614, 623 (1998). The Petitioner must overcome a high hurdle in order to establish his actual innocence.

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." Id. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808..... "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id*. at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Id*. at 589–90 (footnote omitted). A petitioner who asserts a convincing claim of actual innocence need not establish that he was diligent in pursuing this claim. *McQuiggin v. Perkins*, 569 U.S. 383, 393-94 (2013). Unexplained delay, however, still undermines the petitioner's credibility. The Supreme Court has emphasized that "[t]o invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id*. at 1935 (quoting *Schlup,* 513 U.S. at 332, 327).

The record does not reflect either that the provision of § 2244(d)(1)(D) should be applied or that the statute of limitations should be equitably tolled based upon Petitioner's actual innocence. Despite Petitioner's arguments to the contrary, his claims would have been readily apparent from the record and at the time of his direct appeal. Petitioner cannot establish that he acted diligently in pursuing relief. Moreover, he has provided no new reliable evidence supporting his claim of actual innocence. The Ohio Court of Appeals found to the contrary when it affirmed the trial court's denial of Petitioner's untimely September 2016 motion for a new trial:

> {¶ 11} Appellant alleges in assignment of error one that the trial court should have granted him leave to file a motion for a new trial because (1) the state suppressed forensic material evidence, and (2) the prosecutor repeatedly asserted materially false testimony. In assignment of error two, appellant asserts that defense counsel's failure to request and/or investigate discovery fully constituted a denial of due process.
>
> \*\*\*
>
> {¶ 13} In addition, the claims against the prosecutor and defense counsel rely on matters that are contained in the trial record and do not rely on any newly discovered evidence, let alone the evidence attached to appellant's motion for leave. In fact, appellant made similar arguments in his direct appeal. A motion for a new trial based on these arguments was required to be brought within 14 days after the verdict was rendered. Crim.R. 33(B). As such, the argument put forth in

4

the second part of assignment of error one lacks merit, and appellant's assignment of error two is overruled.

{¶ 14} In the first part of assignment of error one, appellant claims that the state suppressed forensic material evidence. In appellant's motion for leave under Crim.R. 33(B), he attached three unauthenticated exhibits to his motion: (1) a BCI report stating that GSR residue was found on one of Eugene's hands ("the GSR report"); (2) a "Crime Scene Procedures" log sheet stating that a "firearms recovery form" was attached; and (3) a BCI "Chain of Custody Report" outlining the chain of custody of the GSR kit taken from Eugene. However, while appellant claims that appellee improperly withheld the GSR report, he presents no evidence, either by affidavit or otherwise, to support this claim.

\*\*\*

{¶ 17} In this case, the trial court found that:

> Defendant cannot satisfy the burden of a motion for leave to file a motion for new trial under Crim.R. 33. Defendant has offered no evidence that he was unavoidably prevented from obtaining the documents attached to his motion prior to trial or how these documents were ultimately discovered. Without any proof about how or when Defendant obtained the documents attached to his motion this Court finds Defendant has wholly failed to establish he was "unavoidably" prevented from discovering the alleged new evidence. Moreover, contrary to Defendant's assertions, nothing within the documents provided do anything to advance Defendant's claim that his trial attorney should have made a self-defense argument, or demonstrate Defendant is not guilty of the crimes for which he was convicted. Defendant claimed in his Motion as he did during the trial that he had nothing to do with the shooting. Thus, a self defense argument would not even apply. For the foregoing reasons Defendant's Motion is DENIED.

(Nov. 23, 2016 Decision and Entry at 2.)

{¶ 18} We agree with the trial court. Appellant has offered no evidence of any kind, let alone clear and convincing proof, that he was unavoidably prevented from obtaining the documents attached to his motion. He does not explain when or how he obtained these documents. In addition, he failed to submit any evidence that he filed his motion within a reasonable time after acquiring the documents.

{¶ 19} In addition, the documents attached to appellant's motion for leave do not establish any constitutional error or otherwise justify a new trial. Apparently, appellant feels that the documents would support a self-defense claim, but he never pursued self-defense at trial. His defense all along was misidentification—

> *i.e.*, that he was not the shooter. The presence of GSR on the victim would not reasonably advance any self-defense claim. None of the several witnesses saw the victim fire or even possess a gun. The presence of GSR was likely from appellant shooting the victim at close range. The document itself states that "[t]he presence of gunshot primer residue on a person's hands is consistent with that individual having discharged a firearm, having been in the vicinity of a firearm when it was discharged, or having handled an item with gunshot primer residue on it." (Emphasis added.) (Mar. 19, 2008 Laboratory Report at 1.) The reference to a "Firearm Recovery Form" on the "Crime Scene Procedures" form proves nothing.
>
> {¶ 20} Our review shows that the trial court did not abuse its discretion in finding that the appellant failed to establish that he was unavoidably prevented from obtaining the alleged new evidence and, as a result, denying appellant's motion for leave to file a delayed motion for a new trial. Appellant's first assignment of error is overruled.

*State v. Monford*, 10th Dist. No. 16AP-866, 2018 WL 1611400, at *3-4 (Ohio Ct. App. Apr. 3, 2018). These findings are presumed to be correct. 28 U.S.C. § 2254(e). Petitioner has failed to rebut this presumption of correctness.

For these reasons and for the reasons detailed in the Magistrate Judge's Report and Recommendation (ECF No. 4), Petitioner's Objection (ECF No. 7) is **OVERRULED.** The Report and Recommendation (ECF No. 4) is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED.**

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court now considers whether to issue a certificate of appealability. "In contrast to an ordinary civil litigant, a state prisoner who seeks a writ of habeas corpus in federal court holds no automatic right to appeal from an adverse decision by a district court." *Jordan v. Fisher*, 135 S. Ct. 2647, 2650 (2015); 28 U.S.C. 2253(c)(1) (requiring a habeas petitioner to obtain a certificate of appealability in order to appeal). The petitioner must establish the substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This standard is a codification of *Barefoot v. Estelle*, 463 U.S. 880 (1983). *Slack v. McDaniel*, 529

U.S. 473, 484 (2000) (recognizing codification of Barefoot in 28 U.S.C. § 2253(c)(2)). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack*, 529 U.S. at 484 (quoting *Barefoot,* 463 U.S., at 893 n. 4).

Where the Court dismisses a claim on procedural grounds, however, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. Thus, there are two components to determining whether a certificate of appealability should issue when a claim is dismissed on procedural grounds: "one directed at the underlying constitutional claims and one directed at the district court's procedural holding." *Id*. at 485. The court may first "resolve the issue whose answer is more apparent from the record and arguments." *Id*.

This Court is not persuaded that reasonable jurists would debate the dismissal of this action as time-barred. Therefore, the Court **DECLINES** to issue a certificate of appealability.

The Court **CERTIFIES** that the appeal would not be in good faith such that an application to proceed *in forma pauperis* on appeal should be **DENIED**.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT**.

Date: November 15, 2019

                _____s/James L. Graham_____
                JAMES L. GRAHAM
                UNITED STATES DISTRICT JUDGE